IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMOTHY RANDALL, ) <br> K60950, ) <br> ) <br>         **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> ILLINOIS DEPT. OF CORR., ) <br> DR. MEYERS, ) <br> B. BLUM, ) <br> CHRISTINE BROWN, ) <br> LACEY, ) <br> JANE DOE (NURSE), ) <br> LATOYA HUGHES, ) <br> DAVID MITCHELL, ) <br> ) <br>         **Defendants.** ) | Case No. 23-cv-2502-DWD |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kimothy Randall, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 11). Plaintiff alleges that he has not received adequate medical supplies for his multiple chronic medical issues, he has sustained injuries because the facility does not have adequate accommodations for him, and he has been retaliated against for filing a grievance on his access to an accessible shower.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On July 23, 2021, Plaintiff was transferred from Lawrence Correctional Center to Pinckneyville. (Doc. 1 at 8). Plaintiff is paralyzed from the waist down, he has an astomy (open wound), he uses a colostomy bag and catheters, and he needs a wheelchair to get around. His ailments require a variety of supplies such as, a large band aid for his astomy, catheters, and colostomy bags. Upon arrival to Pinckneyville, he saw Dr. Meyers about his medical conditions and his need for supplies.

On July 25, 2021, Plaintiff requested an ADA compliant shower chair with wheels, safety locks, and other features. He was presented with a chair that lacked many of the features he desired, but he was faced with the choice of either taking the chair or passing on showers. He was told to raise problems about the shower chair with Defendant Brown, the healthcare unit administrator. Plaintiff opted to shower, but when attempting to maneuver the chair under the showerhead he fell. A half-hour later he was seen by a nurse who gave him Tylenol. He submitted a request for additional care on July 26, 2021. (Doc. 1 at 9).

On August 4, 2021, Plaintiff was seen by Dr. Meyers, and he described his injuries, which included nerve pinching and pain in his neck, shoulder, and upper-back. Dr.

Meyers neither physically examined Plaintiff, nor did he provide any other treatment, which prolonged Plaintiff's pain. At the appointment, Plaintiff also informed Dr. Meyers that he had not been receiving adequate medical supplies, which led to a urinary tract infection, and leakage of blood, puss, mucus, and fecal matter from his astomy. Dr. Meyers assured him he would follow up on his medical supply needs.

On August 14, 2021, Plaintiff filed a grievance because he still lacked adequate supplies. From July 23 to August 14, 2021, he was seen once by Meyers and twice by Defendant Blum. Both promised medical supplies but did not deliver on their promises. At one point, Blum told him it was Defendant Brown's responsibility to order his supplies. (Doc. 1 at 10). Plaintiff was also deprived of his supplies for two additional separate weeks in November of 2021. He alleges he suffered serious injuries from the lack of supplies.

On December 4, 2021, Plaintiff was housed in a cell that was allegedly for four ADA inmates, although he claims the cell was not actually adequate for this purpose. The cell was crowded. Property boxes were strewn about the floor because there was inadequate space to store the boxes and to navigate around the cell with wheelchairs. Plaintiff was unable to adequately maneuver or lock his wheelchair in this environment, and he fell while trying to retrieve items from his property box. He was taken to the healthcare unit where two Jane Doe nurses examined his leg and foot and said it was just bruised. They said he would be called for an x-ray on Monday of the following week. (Doc. 1 at 11).

Plaintiff inquired about his x-ray on December 6, but Defendant Lacey informed him that no x-ray tech was at work that day. Later that day, Plaintiff asked a non-party nurse about his x-ray during medication rounds. She determined there was no report of his fall and examined his leg and foot. She believed it was broken, so the next day she called him to the healthcare unit. On December 7, 2021, Dr. Meyers "looked at his leg and foot (without physically examining it), which was visibly swollen," and he stated an x-ray would be needed.

On December 9 and 10, Plaintiff got no x-ray. On December 11, 2021, he complained to another non-party nurse about his situation, and she again called him to the healthcare unit because he had swelling all the way up his leg. Non-party nurse Kelly examined his leg and phoned Dr. Meyers. Dr. Meyers advised to give an ice pack and ibuprofen, which was the same treatment from December 4, 2021. Finally on December 13, 2021, Plaintiff had an x-ray which revealed a compound fracture. He was sent to an orthopedic doctor who said it was too late to perform surgery, so he gave an orthopedic foot brace, and cautioned Plaintiff about the need to watch out for sores on his foot. Plaintiff alleges that Dr. Meyers' delay of his care resulted in permanent deformation of his right ankle. (Doc. 1 at 13).

Throughout December of 2021, Plaintiff submitted sick call slips for various aliments such as bleeding from his rectum, intense knee pain, and sores on his foot. He was put in to see Dr. Meyers. On December 28, 2021, he saw Dr. Meyers, but Dr. Meyers did not examine any of his injuries and simply said he had hemorrhoids.

On March 1, 2022, Plaintiff wrote a grievance because Defendant Lacey had repeatedly interfered with his right to access the prison shower facilities. He alleges that as a result, Lacey retaliated by preventing him from showering on March 14 or 15, 2022. He further alleges that the Warden of Pinckneyville has changed the shower schedule so that ADA showers are late in the day, and they are for a short period of time. With these changes, he alleges the showers are inadequate because they are filthy, and there is not enough time for all ADA inmates to shower. Due to the filth, he got a UTI, and due to the shortened time, he missed showers on two dates in June of 2022. (Doc. 1 at 15-16).

At the end of Plaintiff's first full complaint, he then appended a second complete complaint that appears to be freestanding but touches on the same factual content. He adds David Mitchell, the Warden of Pinckneyville, as a Defendant in this complaint. (Doc. 1 at 24). He also added Latoya Hughes, the acting director of IDOC. Plaintiff alleges that prior to his transfer to Pinckneyville, he had leg braces, a walker, and physical therapy, which all helped him to be mobile for short periods without his wheelchair. His leg braces and walker were transmitted to Pinckneyville, but they were kept under lock and key in the healthcare unit. (Doc. 1 at 27).

On October 18, 2021, a physical therapist recommended tweaks to his leg braces, and Dr. Meyers approved. On February 22, 2022, Plaintiff was sent to a specialist for repairs to the braces, but staff did not actually bring the braces from Defendant Brown's office. His braces were finally repaired around March 23, 2022. Despite the repairs, he was denied use of the braces until October 17, 2023. He alleges that due to delays and his

intervening leg injury, his braces did not fit. He was sent back for repairs in March of 2023, but staff failed to bring his braces to the appointment. (Doc. 1 at 29).

Plaintiff alleges that Defendants Brown and Meyers have failed to coordinate the repair or use of his braces, and the lack of this has decreased his mobility. He alleges the denial has deprived him of programs and services, so IDOC is also responsible under the ADA/RA. (Doc. 1 at 31).

He alleges that he had repeat problems with his access to medical supplies in July of 2022, and that outside advocates had to complain on his behalf in December of 2022 and February of 2023. (Doc. 1 at 33). Defendant Mitchell has been notified of the problem by advocates. He provides a list of many times when he was denied supplies from July of 2021 to February of 2023. (Doc. 1 at 34-35). He attributes access to supply issues to Meyers, Brown, and Mitchell.

He alleges he has suffered multiple UTIs and other bowel problems, and that treatment has been seriously delayed or denied. He attributes these problems to Mitchell, Meyers, and Brown, for their participation and their receipt of related grievances and correspondence. (Doc. 1 at 37-38). As a result of the shower chair problems, he fell at least twice, and he made repeated requests for help. He submitted a request directly to Defendant Brown in October of 2022, and she said a chair had been ordered but did not provide one. Outside advocates also contacted Defendant Mitchell about the chair and shower access. A chair was not provided until January of 2023. (Doc. 1 at 39). Plaintiff also repeats all his allegation about the fall that fractured his ankle, and he alleges Meyers,

Brown and Mitchell either denied or delayed adequate care for this injury.  (Doc. 1 at 40-46).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Count 1:** ADA/RA Claim against the Illinois Department of Corrections/Latoya Hughes for failing to provide Plaintiff with a safe shower chair, a clean shower facility, or adequate time to shower;
>
> **Count 2:** ADA/RA claim against IDOC/Latoya Hughes for failing to provide a cell that is properly equipped for Plaintiff;
>
> **Count 3:** ADA/RA claim against IDOC/Latoya Hughes for failing to provide Plaintiff with the braces/walker and physical therapy that he needs to maintain partial mobility;
>
> **Count 4:** Eighth Amendment deliberate indifference claim against Defendants Dr. Meyers, Nurse Blum, Christine Brown, and David Mitchell concerning Plaintiff's access to his needed medical supplies for his chronic conditions (astomy, colostomy bag, catheters, and bandages);
>
> **Count 5:** Eighth Amendment deliberate indifference claim against Defendant Dr. Meyers for failing to properly assess and treat Plaintiff's ankle injury;
>
> **Count 6:** First Amendment retaliation claim against Defendant Lacey for refusing Plaintiff showers after he filed a grievance about Lacey.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  See *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissal

Plaintiff named a single Jane Doe nurse in his complaint, and he described this individual as a nurse employed by Wexford. (Doc. 1 at 7). Plaintiff further alleged, "in all her actions described in this complaint, Jane Doe was acting under the color of state law." (*Id.*). Although the naming of a Doe defendant can be acceptable, Plaintiff goes on his compliant to describe seeing two Jane Does the day he fell from his wheelchair in December of 2021. (Doc. 1 at 11). Given the explicit listing of one Jane Doe, and then the discussion of two, the Court cannot properly set forth steps to identify the Doe(s). The Court also notes that other nurses were discussed throughout the allegations without any name at all, Jane Doe or otherwise. Given the ambiguities, the Jane Doe defendant will be dismissed without prejudice.

### Analysis

#### Claims 1-3

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Alongside the ADA, the Rehabilitation Act also provides protections for inmates, and the two statutes are materially identical. *A.H. by Holzmuller v. Illinois High School Ass'n*, 881 F.3d 587, 591 (7th Cir. 2018). Failure to make reasonable accommodations to ensure participation in the public entity's programs or

services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). In the prison context, a plaintiff can make out a prima facie case of discrimination under the ADA by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Access to showers, meals, and toilet facilities is considered a "program or activity" within the meaning of the ADA. *Jaros*, 684 F.3d at 672 (noting that inmate access to showers and meals is a program or activity).

Plaintiff's allegations concerning his access to shower facilities are sufficient at this juncture to proceed under the ADA and the RA. He may also proceed on his allegations about the accessibility of his cell because he alleges that it is cluttered with items which make it impossible for him to properly and safely use his wheelchair. Defendants Hughes (in her official capacity) and the IDOC are proper defendants for the ADA/RA claims, so they will both be served.

By contrast, his allegations about physical therapy or his leg braces do not sound under the ADA or RA because these statues are not violated by a prison's mere failure to provide an inmate with medical care. A claim for inadequate medical treatment is not actionable under the ADA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Plaintiff alleges that he is not getting needed physical therapy, and that it prevents him from improving strength or ambulating around with braces and a walker, but he does not

allege that it actually prevents him from participating in programs or services of the prison, or that he has been denied these items *because* he is disabled.  As such, Plaintiff may proceed on Claims 1 and 2 under the ADA and RA, but not on Claim 3.

**Claim 4**

Plaintiff alleges that for multiple weeks at a time from July 2021 through March of 2023, he was not provided with adequate medical supplies to deal with his chronic conditions.  He has described the personal involvement of Dr. Meyers, Blum, and Brown by alleging he made requests directly to them and/or was told they were responsible for placing orders.  As to Warden Mitchell, he alleges outside advocates contacted the prison and informed Mitchell of his needs, and he also submitted grievances on the topic.  He described ill-effects of not having supplies such as UTIs, and foul drainage from his astomy.  These allegations are sufficient at this juncture against all defendants.

**Claim 5**

Plaintiff alleges that Defendants Meyers, Brown and Mitchell failed to ensure adequate care after he fractured his ankle in December of 2021.  He directly describes Dr. Meyers role in delaying or denying his care, and he alleges he submitted written request to Brown describing his need for care just days after the injury.  The allegations are sufficient to proceed against Defendants Meyers and Brown for their direct involvement.

By contrast, Plaintiff's allegations against Mitchell with relation to this particular injury are overly conclusory.  Plaintiff does not describe how Mitchell became aware of this issue, or what Mitchell did in response to the situation.  As the supervisor of the prison, Mitchell is not automatically liable, so Claim 5 is insufficient as to Mitchell.

**Claim 6**

Plaintiff alleges that on March 1, 2022, he submitted a grievance about Defendant Lacey interfering with his access to ADA shower time, and on March 14 and 15 Lacey retaliated by preventing him from showering. This is a classic claim of retaliation, and it is sufficient as pled. However, the Federal Rules of Civil Procedure limit the types of claims that can be joined together against defendants in a single lawsuit to those that arise "out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A); *Dorsey v. Varga*, 55 F.4th 1094, 1103-04 (7th Cir. 2022) (discussing the Rule 20(a)(2)(A) factors). On its own, the court may "drop a party," or "sever any claim against a party." FED. R. CIV. P. 21.

Claim 6 about retaliation for filing a grievance is largely unrelated to the other claims in this case, and the Court finds that it is an appropriate exercise of discretion to sever this claim. *Dorsey*, 55 F.4th at 1107 (when faced with misjoined claims, a court has several options, including striking the complaint, directing the litigant to correct the joinder problems, or dismissing defendants or severing claims if it will not cause a statute of limitations problem for refiling the claim). Even though there is overlap between this access to showers claim and the ADA access to showers claim in that both concern shower time, the claims are not likely to turn on many of the same facts. Plaintiff's claim against Lacey is relatively freestanding, and the resolution of this claim would likely be significantly delayed by inclusion in this case with other complex medical claims that will require voluminous evidence. Accordingly, the Court will direct that this claim be

severed into a new case, and Plaintiff will have the opportunity to decide if he would like to pay a filing fee to maintain that case separately.

## Motion for Counsel

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers two factors—Plaintiff's efforts to get counsel, and his ability to manage the litigation on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff's motion demonstrates that he has corresponded with attorneys about his case, but this showing is not dispositive. (Doc. 3 at 3-5). It appears that Plaintiff is competent to litigate the case himself at this stage. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010). Plaintiff's complaint was a bit long, but it was easy to understand. Further, at this early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel…cannot be gauged."). No one has been served in this case, and a discovery schedule has not been entered. Although the motion is denied at this juncture, Plaintiff may renew his request for counsel if necessary, as the case progresses.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive initial screening as described above against the Illinois Department of

Corrections/Latoya Hughes; **Claim 4** survives as to Defendants Dr. Meyers, Blum, Christine Brown, and David Mitchell, and **Claim 5** survives as to Dr. Meyers and Brown. The Clerk of Court is **DIRECTED** to **ADD** David Mitchell to this docket sheet as he was listed in the Complaint as a proper defendant in the case caption at page 24, and to **ADD** Latoya Hughes as she was properly named on page 23.  The Clerk is **DIRECTED** to **SERVE** Defendants IDOC, Latoya Hughes, Dr. Meyers, N.P. Blum, Christine Brown, and David Mitchell.

For the reasons stated above, **Claim 6** against Defendant Lacey is severed into a new case.  In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- The motions to proceed IFP (Doc. 2) and for counsel (Doc. 3);

In the new case, Plaintiff shall have the option to proceed on Claim 6 or to dismiss the case without prejudice and before he is required to pay a fee.

The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Lacey and Jane Doe nurse from the docket sheet in this case, and Claim 6 is dismissed from this case.

The Clerk of Court is **DIRECTED** to prepare for Defendants the Illinois Department of Corrections, Latoya Hughes, Dr. Meyers, N.P. Blum, Christine Brown, and David Mitchell: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign

and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with

this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: November 13, 2023

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.